Eminent domain; inverse condemnation; flowage easement; height and frequency of flooding; multi-purpose project; causation. — Plaintiffs seek just compensation for the alleged taking, by the Government, of a flowage easement over their farm above the elevation of 362 feet mean sea level. The claim arises from the death by drowning of a flock of approximately 4,500 turkeys on their farm on the night of November 24, 1973. The turkeys were drowned when the Arkansas River inundated the farm. Some years earlier, in 1967, in connection with the McClellan-Kerr Arkansas River Navigation System (the System), the Government obtained by condemnation a flowage easement on part of plaintiffs’ farm to an elevation of 362 feet mean sea level. During the flooding, the crest of the river reached 363.5 feet at plaintiffs’ property. Plain *671 tiffs claim that the System has permanently changed the character of the Arkansas River, thereby subjecting the farm land situated above the elevation of 362 feet mean sea level to intermittent but inevitably recurring flooding of a greater degree and intensity, including rapidity of the rise, than would have occurred in the absence of the System. Defendant argues that a single flooding does not constitute a taking and the plaintiffs have failed to prove that their land is subject to recurring flooding due to the System. Additionally, defendant asserts that the water levels during the flood were lower than would have occurred without the presence of the System. On defendant’s motion for summary judgment the court, by order entered December 1, 1978, 218 Ct.Cl. 741, remanded the case to the trial judge to resolve certain factual issues. On December 20, 1978 Trial Judge Mastin G. White filed a recommended opinion holding that there was no taking by the defendant for which the plaintiffs should recover. The trial judge found that the works of the System near the farm caused the water level during the flood to rise somewhat more rapidly, and to a slightly higher elevation. Although the faster rate of rise of the flood waters was disadvantageous to the plaintiffs in that it hindered rescue of the flock, their economic interest in the rate of rise did not have the status of a compensable property right protected by the Fifth Amendment, when such interest was weighed against the public interest in the improvement of navigation on a navigable stream. Additionally, the trial judge found that the projected future flooding of plaintiffs’ property would not rise to the level of frequency required before a taking may be found, i.e., the Government’s action would not subject the property to "a permanent liability to intermittent but inevitably recurring overflows.” A temporary flooding of property due to the action of the Government does not constitute a taking of a flowage easement over the property. Moreover, the trial judge concluded that if the System, taken as a whole, i.e., a multistate complex of dams, reservoirs, etc., had not existed, the flooding of the plaintiffs’ land would have been even more severe, and would have been expected to occur with greater frequency. On February 29, 1980 the court, by order, adopted the recommended decision of the trial judge as the basis for its judgment in this case and dismissed the petition.